**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| MARK SWART, | Case No. 1:11-cv-28 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff, Mark Swart, filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two closely related claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On March 14, 2007, Plaintiff filed applications for both Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI), alleging a disability onset date of March 14, 2007 due to both physical and mental impairments. After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On September 1, 2009, an evidentiary hearing was held, at which Plaintiff was represented by counsel. (Tr. 21-60). At the hearing, ALJ Deborah Smith heard testimony from Plaintiff, and from William J. Kiger, an impartial vocational expert.

On October 30, 2009, the ALJ denied Plaintiff's applications in a written decision. (Tr. 11-20).

The record on which the ALJ's decision was based reflects that Plaintiff graduated from high school and had worked as a bartender, general hardware salesperson, and cleaner. (Tr. 19, 27). Plaintiff's met the insured status requirements of the Social Security Act, for purposes of DIB,[1] through December 31, 2007 but not thereafter. (Tr. 13). Plaintiff was born in 1954 and was 54 years old at the time the ALJ rendered her decision. At the hearing, Plaintiff testified that he lives in a house with his brother. Based upon Plaintiff's testimony, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine, lumbar facet joint syndrome, and right shoulder subluxation." (Tr. 13).

Despite these impairments, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a range of medium work, further limited as follows:

> He can lift and/or carry no more than 50 pounds occasionally and 25 pounds frequently, and he can stand and/or walk, as well as sit, for approximately 6 hours in an 8-hour workday. The claimant can never climb ladders, ropes or scaffolds, and he is limited to frequent overhead reaching with the right upper extremity. The claimant should avoid all exposure to hazards such as moving machinery, unprotected heights, and commercial driving.

(Tr. 15). Based upon testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that "the claimant is capable of performing past relevant work as a bartender and hardware salesperson." (Tr. 19). Accordingly, the ALJ determined that Plaintiff was not under disability, as defined in the

---

[1] As explained to Plaintiff at the hearing, for purposes of DIB benefits the ALJ considered whether Plaintiff was disabled on the date he was last insured, but for SSI benefits the ALJ considered whether Plaintiff was disabled up to the date of her decision. (Tr. 23).

2

Social Security Regulations, and was not entitled to DIB or to SSI. (Tr. 20).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that the ALJ erred by finding him not to be credible. Plaintiff further asserts that the ALJ erred in considering his alcohol consumption when determining his credibility. As discussed below, the Court finds no error requiring reversal or remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035

(6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B. No Error In Credibility Determination

The ALJ found that Plaintiff's statements "concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 16). Plaintiff's assertions of error complain both about the methods used to determine Plaintiff's credibility, and about the

ALJ's conclusion that Plaintiff's allegations were not credible.

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

In this case, the ALJ pointed out multiple inconsistencies between the medical records, Plaintiff's testimony, and other evidence. Although it is true that a few of the inconsistencies were explained by Plaintiff, the ALJ's assessment of Plaintiff's credibility on the whole finds substantial support in the evidence of record.

**Lack of Objective and Clinical Support for Disabling Impairments**

Plaintiff claims a disability onset date of February 1, 2007 due to back and knee pain, low blood pressure, headaches, and acid reflux. (Tr. 145). Plaintiff also alleges pain and stiffness in his neck, and hip and leg numbness. (Tr. 16). However, Plaintiff has

5

received relatively little medical care for any of his ailments, most of which find little or no support in objective medical evidence or clinical findings. For example, although Plaintiff alleged disability due in part to his acid reflux, Plaintiff's acid reflux was well-controlled. (Tr. 14). In addition, he complained of headaches but there was no significant medical evidence of headaches; in fact, there was not even a reference to headaches other than to a brief period when Plaintiff was noncompliant with his blood pressure treatment. (Tr. 14). Similarly, although Plaintiff complained that his low blood pressure was disabling because it caused him to pass out, the only incident involving "blacking out" occurred just prior to Plaintiff's alleged disability onset date, in January 2007, with no re-occurrence. (*Id.*). Thus, three of the ailments that Plaintiff alleged caused disabling symptoms caused no more than minimal work-related limitations, if any. (*Id.*).

Plaintiff's remaining complaints, that he suffers from a disabling degree of back, neck, and shoulder pain, and hip and leg numbness, also find little support in the medical records. Plaintiff testified that he has problems with both legs, (Tr. 38), but medical records reflect complaints only concerning his right knee. With respect to that knee, Plaintiff had an x-ray that showed no acute findings (Tr. 287). Additional imaging on January 21, 2009 showed only mild osteoarthritis with a moderate spur at the medial femoral condyle. (Tr. 17). Plaintiff indicated that although he had surgery on his right knee at age 12, he has undergone no surgery since then. (Tr. 17).

Concerning his chronic back pain, Plaintiff's records reflect very conservative treatment over many years. Plaintiff's medical records from his primary care physician, Deborah Pillow, M.D., reflect requests for refills on Vicodin with corresponding prescriptions for many years, at least since 2005 (Tr. 206-209). An office note dated 1/19/07 reflects that

Plaintiff's back pain was "well controlled prior to [a] recent fall." (Tr. 210). When Plaintiff was briefly hospitalized at that same time for an episode of "blacking out," Plaintiff complained of chronic back pain but attending physicians noted normal neurologic examinations with no evidence of motor or sensory deficits. (Tr. 16).

Plaintiff did not undergo an MRI on his back until August 21, 2009. Per that report, Plaintiff had a "tiny central disk protrusion at L5-S1" with minimal additional findings, no neural compression, and only minimal additional findings (Tr. 16-17, 328-329). At an office visit on August 24, 2009, the treating nurse practitioner noted that Plaintiff was in "no acute distress," had full motor function of both lower extremities and intact sensation, and walked "without limp or instability." (Tr. 328). Follow-up treatment with steroid injection was recommended. (Tr. 328). Plaintiff has never had any surgery on his back, and has not had physical therapy in 6-7 years. (Tr. 17). As the ALJ pointed out:

> [T]he claimant's treatment history lacks the typical treatment seen for orthopedic problems, such as physical therapy, use of a TENS unit, hospital admissions and/or emergency room visits, use of a cane, surgery, acupuncture, aqua therapy, back brace, pain management, etc. The Claimant's minimal treatment casts some doubt on his allegations about the severity of symptoms....

(Tr. 17). Thus, in assessing Plaintiff's subjective complaints, the ALJ carefully reviewed the lack of objective medical evidence or clinical records supporting those complaints.

**Noncompliance With Treatment Plan**

In assessing Plaintiff's credibility, the ALJ also noted that Plaintiff had been non-compliant with the medication prescribed for hypertension. *See* Soc. Sec. Ruling 96-7p (holding that credibility may be negatively impacted by a failure to follow treatment as prescribed when there is no good reason for that failure). Plaintiff complains that the ALJ

7

should not have discounted his credibility based upon his failure to follow his treatment plan in March of 2007, because he stopped the medication for a "good reason," based upon the dizziness it was causing him, and called his physician to ask what he should do. (Tr. 210). However, even though records reflect that his physician advised him to "restart" his blood pressure medication, Plaintiff admitted that he had continued not to take his medication the following month. (*Id*). Therefore, it is not clear that the ALJ's use of this evidence against Plaintiff in his assessment of Plaintiff's credibility[2] was error. To the extent that any slight error occurred, substantial evidence nevertheless supports the ALJ's overall assessment of Plaintiff's credibility.

**Activity Level**

The ALJ also cited Plaintiff's daily activities as inconsistent with his complaints of pain and disabling symptoms and limitations. (Tr. 18). The ALJ pointed out inconsistencies between Plaintiff's statements during the application process, and Plaintiff's testimony at the hearing. For example, Plaintiff testified at the hearing that he spends most of the day in bed or in a recliner and watches television. He testified that he rarely cooks, has difficulty washing dishes, and is unable to vacuum. By contrast, Plaintiff stated during the application process that he was able "to do all chores around the house except mow the lawn and golf." (Tr. 152). In his initial appeal of the denial of his claim Plaintiff stated that he "can't walk ½ mile without knees hurting," (Tr. 176), but at the hearing he testified to far more severe limitations, alleging that he cannot walk more than a quarter of a mile before

---

[2] Plaintiff's failure to take his blood pressure medication was not the only time that Plaintiff complained of symptoms that he could have, but failed to treat. The ALJ referenced the fact that although Pliantiff had been hospitalized in February 2008 for suicidal ideation, and complained of depression for two years, he had never sought treatment. (Tr. 14). Even while in the hospital, the Plaintiff "refused to attend groups" on grounds that he "don't like to sit there and talk and the chairs hurt." (Tr. 233).

needing to rest, and that "his legs become numb if he sits more than 10 minutes at a time." (Tr. 16).

Plaintiff complains that the ALJ should not have relied upon one piece of evidence that she cited as inconsistent with his alleged activity level - that Plaintiff "was throwing a ball with his nephew" in March 2007. Plaintiff notes that the medical records reflect that Plaintiff reported that previously mild pain in his right shoulder increased after that activity. (Tr. 272, 275). However, the same records reflect that Plaintiff did not seek treatment for months after the incident, and did not complain of shoulder pain on at least two subsequent office visits. (Tr. 17).

In January 2008 Plaintiff sought additional treatment of his right shoulder pain from Dr. Daniel Reilly. Although Plaintiff suggested in his testimony that Dr. Reilly diagnosed him with a torn rotator cuff (Tr. 36), Dr. Reilly's records indicate that Plaintiff's stiffness was likely due to apprehension rather than any adhesions in the joint, and note no tenderness to palpation, only mild tenderness over the biceps with "some" crepitus on the right and full rotator cuff strength as well as a normal neurologic examination. (Tr. 17). Noting Plaintiff appeared to be in "no acute distress," Dr. Reilly prescribed only conservative treatment, involving "a highly repetitive, low stress home exercise program of rotator cuff strengthening exercises with consideration of corticosteroid injection if symptoms do not improve." (Tr. 276). At a follow-up visit on April 10, 2008, Plaintiff reported "some soreness" but that he "feels the shoulder is stronger." (Tr. 270). At that time, Plaintiff also reported doing exercises once or twice per day, and his examination showed "better motion, good internal rotation, minimal subluxation." Plaintiff was advised to continue with his home exercise course. (*Id*). Plaintiff never returned for additional steroid treatment or

any other more aggressive treatment. Therefore, it was not error for the ALJ to consider, in assessing Plaintiff's credibility, both Plaintiff's statement that he was throwing a ball in March 2007 (after his alleged disability onset date of February 1, 2007), and medical records demonstrating that his shoulder pain was not disabling and improved with exercise treatment.

In addition to the March 2007 ball-throwing incident, the ALJ noted that Plaintiff presented to the emergency room on May 28, 2009 for burns on his hands and feet that occurred while Plaintiff was shocking his sister's pool with chlorine. (Tr. 17-18). Aside from that activity being inconsistent with Plaintiff's testimony that he is able to do little more than move from bed to recliner each day, the ALJ noted that the medical record from the incident noted that Plaintiff was "generally healthy" and that a body systems review was negative for any significant symptoms. (Tr. 17).

**Alcohol Consumption**

In a final assertion of error closely related to the ALJ's assessment of credibility, Plaintiff complains that the ALJ should not have considered Plaintiff's alcohol consumption in the context of his credibility, but instead should have considered Plaintiff's alcohol consumption only after first finding Plaintiff to be disabled. Plaintiff is mistaken. The ALJ clearly considered Plaintiff's alcohol abuse at the proper time in the sequential analysis, and was not prohibited from reconsidering Plaintiff's inconsistent statements concerning his alcohol abuse in the context of assessing Plaintiff's credibility.

First, at Step 2, the ALJ noted Plaintiff's heavy alcohol consumption but also found Plaintiff's alcohol abuse not to be a "severe" impairment, based upon records in which Plaintiff stated in 2001 that he had been drinking for the previous 25 years, and had

"worked without problem for most of that time." (Tr. 15). A 1996 amendment to the Social Security Act states that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addition would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §423(d)(2)(C). The regulations that implement this legal standard carefully set forth the sequential evaluation process to be followed whenever the issue of substance abuse presents itself. Under the relevant regulations, an ALJ must *first* determine whether a claimant suffers from a disability under 20 C.F.R. §416.920, before proceeding - if necessary - to a determination of whether the substance abuse is a "contributing factor to the determination of a disability." 20 C.F.R. §416.935. This is precisely what the ALJ did in this case - she reviewed Plaintiff's symptoms, but found based upon Plaintiff's work history that his alcohol abuse did not actually cause any work-related limitations. The regulations no more mandate that a diagnosis of substance abuse constitutes a "severe" impairment and/or constitutes a disabling impairment, than do the regulations mandate those conclusions for any other diagnosis.

After concluding both that Plaintiff's alcohol abuse was not a "severe" impairment and that it caused no functional limitations, the ALJ reconsidered Plaintiff's multiple inconsistent statements concerning his alcohol abuse in the context of assessing his credibility. Again, the ALJ's analysis reveals no error, since inconsistent statements are routinely considered in assessing credibility.

In this case, Plaintiff testified at the hearing that he drinks "[p]robably six to 10 beers a day, five days a week," but then quickly revised his testimony to state that he only drinks four days a week, because he does not drink "Monday through Wednesday." (Tr. 27). In

2001, Plaintiff informed an attending physician that he has consumed a 12-pack of beer per day for the past 25 years. (Tr. 18). By contrast, during a brief hospitalization in January 2007, Plaintiff denied "smoking or drinking." (Tr. 192). On March 1, 2007, Plaintiff also denied drinking to his treating physician. (Tr. 18, 210).

The ALJ also cited as inconsistent the fact that Plaintiff testified that he does not drink alcohol when he takes his prescription Vicodin, but reported to the contrary in February 2008 when admitted to University Hospital for suicidal ideation on February 15, 2008, following a breakup with his girlfriend and death of his mother. An admission record notes Plaintiff's "ethanol abuse" and that Plaintiff drank beer and took Vicodin "in an attempt to hurt himself." (Tr. 235). Plaintiff complains that it was error for the ALJ to have considered this statement as inconsistent with the record, because it was connected with Plaintiff's psychiatric admission. While the ALJ's notation of this particular "inconsistent" statement may not have been the best example, the record strongly supports the ALJ's incredulity at Plaintiff's testimony that he does not take Vicodin and drink alcohol at the same time. Plaintiff clearly testified at the hearing that he takes three to four Vicodin daily, not just on the three days that he refrains from drinking. (Tr. 37).

As the ALJ also pointed out, other inconsistencies abound concerning Plaintiff's longstanding alcohol abuse. Plaintiff testified that he has never had a problem with alcohol, despite a history of 4 DUI charges and continuous heavy drinking. (Tr. 18). Plaintiff denied any substance abuse at the time of his hospital admission for suicidal ideation, (Tr. 238), but was diagnosed upon discharge with a mood disorder, not otherwise specified, as well as alcohol dependency and opiate dependency. (Tr. 232). At the time, the attending physician also noted that Plaintiff "is concerned about his disability payments. He says that

he is in terrible pain but appears to be in no apparent distress." (Tr. 233). During his stay, Plaintiff "primarily focused on his physical discomfort rather than on his suicidality or his depression" and was "extremely concerned about his disability payments and receiving his opiates to deal with his apparent pain." (*Id.*).

In short, the ALJ committed no error in concluding that "the fact that the claimant minimizes his use of alcohol and outright denies that he has a problem or takes Vicodin with alcohol further undermines his overall credibility."

### Non-Disability Finding

Plaintiff testified that he worked as a bartender from 1994 through 2002, and that he also worked in a hardware store. Although Plaintiff stated in one portion of his application that he did not stop working until February 1, 2007 (Tr. 145), his testimony and earnings record reflect that he last earned income in 2002. (Tr. 29, 131). Two state medical consultants opined that Plaintiff had few work restrictions. (Tr. 222-230). The ALJ gave great weight to the most recent assessment, noting that no other treating or consulting physicians had provided any contrary opinions. (Tr. 19). The ALJ properly considered the record as a whole, including the medical and clinical evidence and Plaintiff's statements and testimony, in formulating Plaintiff's RFC. Plaintiff's RFC does not preclude his previous work. The ALJ committed no reversible error in assessing Plaintiff's credibility, and her finding of non-disability is well-supported by substantial evidence in the record presented.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

MARK GORDON SWART,　　　　　　　　　　Case No. 1:11-cv-28

　　　　Plaintiff,　　　　　　　　　　　　　　Barrett, J.
　　　　　　　　　　　　　　　　　　　　　　Bowman, M.J.

　　v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

　　　　Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).